UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


ROGER WOLFE,

          Plaintiff,

v.                                    Civil Action No. 2:08-01023

PAUL A. GREEN, JASON S. CRANE,
J.K. RAPP, KRISTY L. LAYNE,
D.L. LEMMON, WEST VIRGINIA STATE POLICE,
JASON A. TACKETT,
EMERGENCY MEDICINE PHYSICIANS OF KANAWHA COUNTY, PLLC,
and JOHN DOES 1-3,

          Defendants.


MEMORANDUM OPINION AND ORDER


          Pending is plaintiff Roger Wolfe's motion to remand
filed September 24, 2008, contending that two of the defendants
failed to consent to the removal of this action from state court
within the thirty-day period prescribed by 28 U.S.C. § 1446(b).
While the rule of unanimity, applicable here, requires the
consent of all defendants in due course served, each defendant
has thirty days from service upon him in which to consent.
McKinney v. Bd. of Trs. of Md. Cmty. Coll., 955 F.2d 924, 928
(4th Cir. 1992).

1

I.

Mr. Wolfe instituted this action by filing a complaint in the Circuit Court of Kanawha County, West Virginia on July 21, 2008.  A statement of the facts alleged in the complaint, while unnecessary to a decision on the motion to remand, may be helpful.  The allegations, as set forth in the complaint, follow.

At approximately 11:40 p.m. on June 16, 2007 Mr. Wolfe was pulled over on suspicion of driving under the influence. (Compl. ¶ 13).  Later that evening, at approximately 12:30 a.m., he was arrested, handcuffed with his hands behind his back, and taken to the West Virginia State Police barracks in South Charleston, West Virginia.  (Id. ¶ 14).  Upon arrival at the barracks, Mr. Wolfe was placed in a hallway with several other detainees.  (Id. ¶ 15).  At some point Mr. Wolfe, still rear cuffed, was seated in the "booking office" where West Virginia State Trooper, Kristy L. Layne ("Trooper Layne") was filling out paperwork.  (Id. ¶¶ 6, 16, 17).  Trooper Layne became irritated because Mr. Wolfe was smiling and asked what he was smiling about.  (Id. ¶ 18).  After receiving no response, Trooper Layne left her desk, stated that "she would take the smile off his face," and told Mr. Wolfe to stand up.  (Id.)  When Mr. Wolfe

complied, Trooper Layne grabbed and shook him, and then shoved him back into his chair.  (Id.)

Following the altercation between Mr. Wolfe and Trooper Layne, West Virginia State Trooper Paul A. Green ("Trooper Green") entered the booking office and began talking with Trooper Layne.  (Id. ¶ 19).   Trooper Green then told Mr. Wolfe that he "would take the smile off his face," grabbed him, and took him into an empty room adjoining the booking office.  (Id. ¶ 20).  The complaint states, upon information and belief, that West Virginia State Trooper Jason S. Crane ("Trooper Crane") was also in the empty room, and that without provocation Trooper Green, aided by Trooper Crane, "unnecessarily, unreasonably, and excessively assaulted and battered Mr. Wolfe, while he had his hands handcuffed behind his back."  (Id. ¶¶ 4, 22).  Mr. Wolfe contends that Troopers Green's and Crane's use of force was not in a good faith effort to maintain or restore discipline.  (Id. ¶ 23).  While due to severe head trauma, Mr. Wolfe has no memory of the events leading up to, during, or immediately after his beating, (Id. ¶ 26), Mr. Wolfe asserts upon information and belief that as a result of the beating, he began to bleed from his head and nose and that an unknown trooper was ordered to clean up the blood with a mop.  (Id. ¶ 22).  When Trooper Green

3

exited the room where the beating occurred he asked the other detainees in the booking room "if anyone else wanted to be a smart ass," and threatened to take them into the adjoining room. (Id. ¶ 24).  The complaint states that for several months prior to, and on the night of Mr. Wolfe's beating, none of the surveillance cameras in the barracks were working and that West Virginia State Police officials and troopers had knowledge of this state of affairs.  (Id. ¶ 25).

At 1:13 a.m. on June 17, 2007, Mr. Wolfe was admitted to Thomas Memorial Hospital.  (Id. ¶ 27).  The complaint states, upon information and belief, that rather than immediately treating Mr. Wolfe's injuries, the treating doctor, Jason A. Tackett ("Dr. Tackett"),[1] allowed a supervisory West Virginia State Trooper, Sergeant J.K. Rapp ("Sergeant Rapp"), to interview and take statements from Mr. Wolfe regarding the circumstances of his beating.  (Id. ¶ 28).  Mr. Wolfe contends that this interview was conducted in an attempt to exonerate officers of the West

---

[1] On June 17, 2007 Dr. Tackett was employed by Emergency Medicine Physicians of Kanawha County, PLLC ("EMP"), a corporation under contract with Thomas Memorial Hospital to dispense emergency services.  (Compl. ¶ 10).  The complaint states, upon information and belief, that the West Virginia State Police "utilized" EMP to supervise, examine and treat detainees and arrests who were injured in the course of their arrest and/or detention.  (Id.)

4

Virginia State Police from liability for the beating and had nothing to do with his arrest. (Id.) According to the complaint, Dr. Tackett acted in furtherance of a conspiracy and joint venture to deprive Mr. Wolfe of his rights. (Id.)

During the course of his interview of Mr. Wolfe, Sergeant Rapp wrote down questions, and Mr. Wolfe's answers, on a sheet of paper. (Id. ¶ 29). Mr. Wolfe was then required to initial next to each question and answer. (Id.) The complaint states that Mr. Wolfe's initials are illegible and made randomly, at times above the lines Sergeant Rapp drew next to the questions, and at times below. (Id.) Due to his head trauma, Mr. Wolfe has no recollection of the interview which ended at approximately 2:10 a.m. (Id.) Mr. Wolfe contends that Sergeant Rapp acted in an attempt to "cover up the assault and battery of Mr. Wolfe and further deprive him of his civil rights." (Id. ¶ 30).

At the conclusion of the interview, Mr. Wolfe underwent a CT scan and radiological testing. (Id. ¶ 32). His head wounds were also sutured. (Id.) The CT scan and x-rays revealed several fractured bones in Mr. Wolfe's nose and face, including to bones around his eyes. (Id. ¶ 33). Despite these injuries, and severe head trauma, Mr. Wolfe was released to the custody of

Trooper Green at approximately 4:15 a.m. on June 17, 2007 and taken to the South Charleston Regional Jail. (Id. ¶ 34). Later that morning, Mr. Wolfe went before a magistrate judge for arraignment via video conference. After several hours he was arraigned and then released. (Id. ¶¶ 35-36).

On June 18, 2007, the day after his release, Mr. Wolfe went to his primary care physician complaining of pain and watery discharge from his nose. (Id.) Mr. Wolfe's primary care physician determined that Mr. Wolfe's injuries were potentially life threatening and told him to go to the hospital immediately. (Id. ¶¶ 36, 37). Mr. Wolfe went to the Charleston Area Medical Center where doctors determined that the watery discharge from his nose was spinal fluid and confirmed the several fractures in his nose and face. (Id. ¶ 37). Given his injuries, Mr. Wolfe was admitted to Charleston Area Medical Center that day and discharged on June 23, 2007. (Id. ¶ 38).

Mr. Wolfe's ten count complaint names Trooper Green, Trooper Crane, Trooper Layne, Sergeant Rapp, Dr. Tackett and EMP, as well as the Superintendent of the West Virginia State Police, D. L. Lemmon ("Superintendent Lemmon"), the West Virginia State

6

Police ("WVSP"), and John Does 1-3 as defendants.[2]  The following
claims are set forth: Count I, Violation of 42 U.S.C. § 1983 for
Excessive Force (against defendants Green and Crane); Count II,
Violation of 42 U.S.C. § 1983 for Unnecessary Infliction of Pain
and Suffering (against defendants Green and Crane); Count III,
Violation of 42 U.S.C. § 1983 for Failure to Intervene to Prevent
the Use of Excessive Force or the Unnecessary Infliction of Pain
and Suffering (against defendants Green, Crane, and Layne); Count
IV, Violation of 42 U.S.C. § 1983 for Coercive Questioning and
Conduct that Shocks the Conscious (against defendant Rapp); Count
V, Conspiracy to Violate 42 U.S.C. § 1983 for Coercive
Questioning and Conduct that Shocks the Conscious (against
defendants Green, Crane, Layne, Rapp, Tackett, and EMP); Count VI
Conspiracy to Violate 42 U.S.C. § 1983 (against defendants Green,
Crane, Layne, Rapp, Tackett, and EMP); Count VII, Common Law
Assault and Battery (against defendants Green, Crane, and Layne);
Count VIII, Common Law Intentional or Negligent Infliction of
Emotional Distress (against defendants Green, Crane, Layne, and
WVSP); Count IX, Violation of 42 U.S.C. § 1983 for Failure to
Train, Supervise, and have Adequate Policies (against defendants

_____

[2] The complaint states that "[d]efendants John Does 1-3 are
persons involved, but presently unidentified in the events set
forth below," (Compl. ¶ 11), but does not state any claims
against the John Doe defendants.

7

Rapp and Lemmon), Count X, Common Law negligent Supervision, Hiring, Training, Discipline, and Retention (against defendants Rapp, Lemmon and, WVSP).  Mr. Wolfe seeks both damages at law and equitable relief, in addition to fees, costs and any other relief the court deems equitable and just.  (Id. at 16-17).

II.

On July 31, 2008, Benjamin Bailey, counsel for Mr. Wolfe, wrote a letter to John Hoyer, a West Virginia Assistant Attorney General, seeking to determine the name of counsel for the WVSP and the West Virginia State Trooper defendants other than Crane.  In pertinent part, the letter reads,

> I represent Roger Wolfe in the above referenced matter.  A courtesy copy of the complaint is enclosed. My office has been notified by Gary Pullin that he is representing Jason Crane and will accept service on behalf of Trooper Crane.
>
> I write to inquire who counsel is for the West Virginia State Police and the remaining Troopers and to see if they will accept service or if we need to serve the Troopers individually.

(7/31/08 Bailey Letter, Mot. to Remand, ex. 1).  By letter dated August 12, 2008, Mr. Hoyer responded.  The relevant portion of Mr. Hoyer's letter reads, "Please be advised as counsel for the West Virginia State Police I will accept service for Colonel

8

[Superintendent] Lemmon and the Department [WVSP] regarding the above referenced matter."  (8/12/08 Hoyer Letter, Mot. to Remand, ex. 2).

Acting on Mr. Hoyer's letter, on August 18, 2008, Mr. Bailey sent a second letter to Mr. Hoyer which reads,

> Pursuant to your letter, please find enclosed copies of the Summonses and Complaint in the above-referenced matter.  Also, enclosed is an Acceptance of Service for the Summons and Complaint against D.L. Lemmon and the West Virginia State Police, for your signature and appropriate notary.

> Please return the original documents to my office and I will have it filed with the Court.

> Thank you for your attention to this matter, and please feel free to contact me should you have any questions or concerns.

(8/18/08 Bailey Letter, Mot. to Remand, ex. 3).  As represented, the letter was accompanied by the following enclosures: a document titled "Acceptance of Service," a summons directed to the "West Virginia State Police c/o John A. Hoyer," a summons directed to "D.L. Lemmon c/o John A. Hoyer," and a copy of the complaint.[3]  (Id.)  According to Trooper Green's response to Mr. Wolfe's motion to remand,[4] while Mr. Hoyer received Mr. Bailey's

_____

[3] A document titled "Civil Case Information Statement" was also included.

[4] Sergeant Rapp has joined Trooper Green's response in opposition to Mr. Wolfe's motion to remand.  (Rapp Joinder in

letter of August 18, 2008, he never executed and returned the "Acceptance of Service." (Resp. to Mot. to Remand at 3-4).

Invoking the court's federal question jurisdiction, Trooper Crane removed on August 25, 2008. (Not. of Rem. ¶ 4); see 28 U.S.C. § 1331. The notice of removal states that Trooper Crane was served on August 4, 2008, and that as of the date of removal, the other defendants had not been served. (Not. of Rem. ¶ 1). On September 24, 2008 Mr. Wolfe filed the motion to remand, arguing that despite Trooper Crane's representations, Dr. Tackett, EMP, Superintendent Lemmon and the WVSP had been served at the time of removal, and that because Superintendent Lemmon and the WVSP failed to timely consent to removal within thirty days of being served, the case should be remanded. (Memo. in Supp. Mot. to Remand at 1).

Dr. Tackett and EMP were served on August 21, 2008 and timely consented to removal on September 10, 2008. (Tackett & EMP Consent to Rem. at 1). The WVSP filed a consent to removal by its counsel, Mr. Hoyer, on September 25, 2008. Its consent states:

> This Defendant agreed to accept service at the request
> of the Plaintiff.  This Defendant asserts that

---

Resp. to Mot. to Remand at 1).

> acceptance is proper upon the waiver of such service
> being sent to the plaintiff.  This Defendant further
> states in support of its consent that service of the
> Complaint was effected via waiver of service of today's
> date and that its consent to remove is timely.

(WVSP Consent to Rem. at 1).  Six days later, on October 1, 2008,

Superintendent Lemmon also filed a consent to removal through Mr.

Hoyer.  Superintendent Lemmon's consent states:

> This Defendant agreed to accept Service at the request
> of the Plaintiff.  This Defendant asserts that
> acceptance is proper upon the waiver of such service
> being sent to the Plaintiff.  This Defendant further
> states in support of its consent that service of the
> Complaint was via waiver of acceptance dated September
> 25th 2008 and that its consent is timely.

(Lemmon Consent to Rem. at 1).[5]  Thereafter, Troopers Green and

Layne, and Sergeant Rapp, having waived service of process

pursuant to Fed. R. Civ. P. 4(d), timely consented to removal.[6]

---

[5] Though no document designated "waiver of acceptance" has
been filed with the court, and despite the representation of
Trooper Green that the "Acceptance of Service" was never
executed, (Resp. to Mot. to Remand at 3-4), it appears
Superintendent Lemmon and the WVSP executed the "Acceptance of
Service" and mailed it to Mr. Wolfe on September 25, 2008.  (WVSP
Consent to Rem. at 1; Lemmon Consent to Rem. at 1).  Assuming,
arguendo, that Superintendent Lemmon and the WVSP were not served
earlier, and even if the "Acceptance of Service" was never
executed, service would likely be deemed complete on September
25, 2008 when Superintendent Lemmon and the WVSP filed their
joint answer without explicitly raising insufficiency of process
as a defense.  See Fed. R. Civ. P. 12(h)(1)(B)(ii).

[6] Trooper Green's consent to removal, filed October 1, 2008,
states that he waived service of process under Rule 4 on
September 19, 2008.  (Green Consent to Rem. ¶ 1).  Trooper
Layne's and Sergeant Rapp's consents to removal, which were filed

It is undisputed that, barring a defect in the removal process, removal would be proper.  Thus, the only question is the timeliness of the consents to removal by Superintendent Lemmon and the WVSP.

III.

        The right to remove a case from state to federal court originates in 28 U.S.C. § 1441(a), which reads,

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Possession of original jurisdiction by the district courts, however, does not ipso facto make removal proper.  There are procedures to be complied with.  Pursuant to 28 U.S.C. § 1446(b),[7] if a case is removable based upon the initial pleading,

───────────────

on October 14, 2008, state that they waived service under Rule 4 on October 2, 2008.  (Layne Consent to Rem. ¶ 1; Rapp Consent to Rem. ¶ 1).

    [7] Section 1446(b) provides in pertinent part:
    The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based,

a notice of removal must be filed within thirty days of service
"of the summons and complaint, or receipt of the complaint,
'through service or otherwise,' after and apart from service of
the summons."  Murphy Bros., Inc. v. Michetti Pipe Stringing, 526
U.S. 344, 348 (1999).  What has been referred to as "the rule of
unanimity" requires, ordinarily, that all defendants join in, or
consent to, removal.  See 28 U.S.C. § 1446(a);[8] Lapides v. Bd. of
Regents of the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002)
("removal requires the consent of all defendants.") (citing
Chicago, R.I. & P.R. Co. v. Martin, 178 U.S. 245, 248 (1900));
Brodar v. McKinney, 378 F. Supp. 2d 634, 636 (M.D.N.C. 2005)
("Courts have uniformly ruled that the phrase 'a defendant or
defendants' in Section 1446(a) of Title 28 requires that all

_____

or within thirty days after the service of summons upon
the defendant if such initial pleading has then been
filed in court and is not required to be served on the
defendant, whichever period is shorter.

[8] Section 1446(a) provides:
A defendant or defendants desiring to remove any civil
action or criminal prosecution from a State court shall
file in the district court of the United States for the
district and division within which such action is
pending a notice of removal signed pursuant to Rule 11
of the Federal Rules of Civil Procedure and containing
a short and plain statement of the grounds for removal,
together with a copy of all process, pleadings, and
orders served upon such defendant or defendants in such
action.

13

defendants join in or otherwise consent to a notice of removal filed under Section 1441(a) of Title 28.").

An exception to the rule of unanimity applies where less than all defendants have been served at the time of removal. In such a case, for removal to be proper, it is held that only the defendants served at the time of removal need join, or consent to, the notice of removal.  See Unicom Sys., Inc. v. Nat'l Louis Univ., 262 F. Supp. 2d 638, 640 n.3 (E.D. Va. 2003); Means v. G & C. Towing, Inc., 623 F. Supp. 1244, 1245 (S.D. W. Va. 1986) ("unserved defendants are excepted from the general rule.").  Indeed, even a served defendant at the time of removal need not join in the removal but has, according to the persuasive view adopted by the Fourth Circuit, thirty days from service upon him within which to consent.  "Individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid removal petition." McKinney v. Bd. of Trs. of Md. Cmty. Coll., 955 F.2d 924, 928 (4th Cir. 1992).

While "failure of all defendants to join the removal petition does not implicate the court's subject matter jurisdiction," Payne v. Brake, 439 F.3d 198, 203 (4th Cir. 2006), the requirement that all defendants served at the time of removal

14

join the petition, or consent thereto within thirty days, is

nevertheless mandatory.[9]  "Accordingly, the failure of all served

defendants to join in or consent to a removal petition within the

thirty day period 'is sufficient to render removal improper and

to require remand.'"  <u>Unicom Sys.</u>, 262 F. Supp. 2d at 641

(quoting <u>Adams v. Aero Servs. Int'l, Inc.</u>, 657 F. Supp. 519, 521

(E.D. Va. 1987)).  Because ours is a federal system of

government, and removal impinges on state sovereignty, courts are

obliged to strictly construe removal statutes.  <u>See</u> <u>Shamrock Oil

& gas Corp. v. Sheets</u>, 313 U.S. 100, 109 (1941) ("Due regard for

the rightful independence of state governments, which should

actuate federal courts, requires that they scrupulously confine

their own jurisdiction to the precise limits which the statute

has defined."); <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29

F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction

raises significant federalism concerns, we must strictly construe

removal jurisdiction.").  The burden of establishing the

propriety of removal is upon the defendant or defendants, and all

_____

[9] Because the thirty day consent requirement does not affect
subject matter jurisdiction, "a plaintiff who fails to make a
timely objection waives the objection."  <u>Payne</u>, 439 F.3d at 203.
<u>See</u> 28 U.S.C. § 1447(c) ("A motion to remand the case on the
basis of any defect other than lack of subject matter
jurisdiction must be made within 30 days after the filing of the
notice of removal under section 1446(a).").

15

doubts must be resolved in favor of remand.  See In re Blackwater
Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006) ("The
party seeking removal bears the burden of demonstrating that
removal jurisdiction is proper."); Hartley v. CSX Transp., Inc.,
187 F.3d 422, 425 (4th Cir. 1999) ("courts should 'resolve all
doubts about the propriety of removal in favor of retained state
court jurisdction.'"); Mulcahey, 29 F.3d at 151 ("The burden of
establishing federal jurisdiction is placed upon the party
seeking removal.").


                              IV.


          Mr. Wolfe argues that Superintendent Lemmon and the
WVSP were properly served with process, and therefore the thirty
day time period for consent to removal by Lemmon and the WVSP
began, on August 18, 2008 when Mr. Hoyer received Mr. Bailey's
letter accompanied by the summonses, complaint and other
documents.[10]  In the alternative, Mr. Wolfe contends that even if
service by mail upon Mr. Hoyer was technically defective, such
service was sufficient to trigger the start of the thirty day
consent period.  If either argument is accepted, Superintendent

_____

          [10] Trooper Green apparently concedes that Mr. Hoyer received
Mr. Bailey's letter via mail on August 18, 2008.

                              16

Lemmon and the WVSP would have been required to consent to removal by September 17, 2008. According to Mr. Wolfe, because Superintendent Lemmon and the WVSP did not file their respective consents to removal until September 25th and October 1st of 2008, their consents were untimely and the case must be remanded.

By way of response, Trooper Green argues that because Superintendent Lemmon and the WVSP were not served prior to removal, their consent was not required, and even if it was, they expressed their consent to removal orally to the attorneys for Mr. Wolfe and Trooper Crane. (Hoyer Aff. ¶¶ 3-4, Resp. to Mot. to Remand, ex. A; Pullin Aff. ¶ 2, Resp. to Mot. to Remand, ex. B).[11] Trooper Green also argues that if the case is remanded his due process rights will be violated.

---

[11] Mr. Hoyer's affidavit states that on or before August 25, 2008 he expressed the consent of Superintendent Lemmon and the WVSP to removal to counsel for Trooper Crane, Gary E. Pullin. (Hoyer Aff. ¶ 3, Resp. to Mot. to Rem., ex. A). The affidavit states further that before September 24, 2008 Mr. Hoyer expressed the same to co-counsel for Mr. Wolfe, Jonathan R. Marshall, by telephone. (Id. ¶ 4). Mr. Pullin's affidavit states that Mr. Hoyer expressed to him the consent of Superintendent Lemmon and the WVSP to removal on or before August 25, 2008. (Id. ¶ 2). Mr. Pullin's affidavit also states that he did not allege consent to removal by Superintendent Lemmon and the WVSP in the notice of removal because he did not believe they had been served. (Id. ¶ 3).

17

A. Service of Process

     When Mr. Hoyer received the summonses and complaint on August 18, 2008, this case was before the Circuit Court of Kanawha County.  As a result, West Virginia law controls the question of whether service was proper.  See Lee v. City of Beaumont, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue.").  Personal or substituted service upon an individual, such as Superintendent Lemmon, must be made in accordance with W. Va. R. Civ. P. 4(d)(1), which states,

> (1) Individuals.
>
> Service upon an individual other than an infant, incompetent person, or convict may be made by:
>
> (A) Delivering a copy of the summons and complaint to the individual personally; or
>
> (B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or
>
> (C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or
>
> (D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or

18

> (E) The clerk sending a copy of the summons and
> complaint by first class mail, postage prepaid, to the
> person to be served, together with two copies of a
> notice and acknowledgment conforming substantially to
> Form 14 and a return envelope, postage prepaid,
> addressed to the clerk.

When faced with the question of the proper manner in which to serve the West Virginia Department of Transportation, the Supreme Court of Appeals of West Virginia concluded that "the service of process provisions of Rule 4(d)(6)(D) can be used on domestic public corporations, which include state agencies, that are not otherwise covered in Rule 4(d)(6)(A) through (C)."  White v. Merryman, 418 S.E.2d 917, 924 (W. Va. 1992).  The WVSP is a state agency not covered by Rule 4(d)(6)(A) through (C) and service upon it must be made under (D),

> (i) by delivering or mailing in accordance with
> paragraph (1) above a copy of the summons and complaint
> to any officer, director, or governor thereof, or (ii)
> by delivering or mailing in accordance with paragraph
> (1) above a copy thereof to an agent or attorney in
> fact authorized by appointment or by statute to receive
> or accept service in its behalf.

W. Va. R. Civ. P. 4(d)(6)(D).  As will be further noted, the quoted words "by delivery or mailing in accordance with paragraph (1)" means that service is to be made by hand delivery except that service by the clerk is to be by mailing.  It is not disputed that Rule 4(d)(6)(D) controls the manner in which process is to be served upon the WVSP.  (Resp. to Mot. to Remand

19

at 4; Reply to Resp. to Mot. to Remand at 1-4).

		Neither Superintendent Lemmon nor the WVSP were served
with process in a manner sanctioned by the West Virginia Rules of
Civil Procedure.  Service upon an individual, such as
Superintendent Lemmon, must be made in accordance with Rule
4(d)(1).  Because Rule 4(d)(6)(D) incorporates the modes of
service set forth in Rule 4(d)(1), service upon a state agency
such as the WVSP must also be made in accordance therewith.
Thus, assuming arguendo that Mr. Hoyer qualified as the "agent or
attorney in fact"[12] for both Superintendent Lemmon and the WVSP,

_____

	[12] While the parties refer to Mr. Hoyer as the attorney for
Superintendent Lemmon and the WVSP, neither party addresses the
question of whether he was empowered to accept service on behalf
of either defendant.  See McClay & Mountain Top Realty Inc. v.
Mid-Atl. Country Magazine, 435 S.E.2d 180, 182-83 (W. Va. 1993)
(stating that a party's attorney is not necessarily empowered to
accept service); see also 72 C.J.S. Process § 68 (2008) ("An
acknowledgment of service of process by an attorney or agent
expressly authorized to make such acknowledgment is sufficient,
but the authority of an attorney or agent to make the
acknowledgment must be specially conferred and must be shown, and
acceptance by one acting without authority is insufficient.").
	Pursuant to W. Va. Code § 14-2-11 "[t]he attorney general
shall represent the interests of the State in all claims coming
before the court."  Section 15-2-22 provides that "[t]he attorney
general may, upon the request of the superintendent, assign an
assistant attorney general to the department."  Mr. Hoyer has
appeared in this action on behalf of the WVSP and Superintendent
Lemmon.  But even if Mr. Hoyer is the assistant attorney general
assigned to the WVSP, this does not mean that he was empowered to
accept service for the WVSP or Superintendent Lemmon.  Mr. Hoyer
is clearly not an "officer, director or governor" of the WVSP.
W. Va. R. Civ. P. 4(d)(6)(D)(i).  Nor has it been shown that he

service was required to be made by "[d]elivering a copy of the summons and complaint" to him as such "agent or attorney in fact."  W. Va. R. Civ. P. 4(d)(1)(C).[13]  Process was not "delivered" to Mr. Hoyer, but instead sent by mail.

Trooper Green argues that mailing of process does not suffice to effect service under Rule 4(d)(1)(C).  (Resp. to Mot. to Remand at 5).  Mr. Wolfe does not explicitly contest this proposition.  (Reply to Resp. to Mot. to Remand at 2).  The text of Rule 4(d)(1) supports Trooper Green's position.  Sections (A),(B), and (C) of Rule 4(d)(1) all refer to "delivery" of a copy of the summons and complaint.  In contrast, sections (D) and (E) provide for  the clerk's "sending" of the summons and complaint by "mail."  The rule, therefore, clearly distinguishes between "delivery" on the one hand, and "sending" by mail on the

---

is an "agent or attorney in fact authorized by appointment or statute to receive or accept service in its behalf."  W. Va. R. Civ. P. 4(d)(6)(D)(ii).  Section 15-2-22 can not be deemed to vest the assistant attorney general assigned to the WVSP with the authority to accept service.  Further, no evidence has been adduced which tends to show that Mr. Hoyer was authorized by appointment to accept service.  Absent such proof, it cannot be said that Mr. Hoyer possessed the authority to accept service on behalf of the WVSP or Superintendent Lemmon.

[13] Service was clearly not effected under Rule 4(d)(1)(A),(B),(D), or (E).  Rule 4(d)(1)(A) provides for personal service; (B) provides for service upon an individual's family member; (D) and (E) both require involvement of the clerk.

21

other.  Because Rule 4(d)(1)(C), governing service upon a
defendant's authorized agent or attorney-in-fact, explicitly
requires "delivery," it cannot be said that the rule contemplates
such service by mail.  See 72 C.J.S. *Process* § 64 (2008) ("Where
the statute or court rules provide for service by delivery of a
copy of the process, the copy should, except as otherwise
provided by statute, be delivered to, and left with the defendant
personally, by hand."); see also Hunstock v. Estate Dev. Corp.,
138 P.2d 1, 3 (Cal. 1943) ("It will not be seriously argued that
by the use of the word 'delivery' in the sentence referring to
service upon an agent, the Legislature intended that it should be
made in any other manner than by hand.").

     Mr. Wolfe invites the court to distinguish between
"technically defective" and "totally improper" service.  (Memo.
in Supp. Mot to Rem. at 4-6).  He argues that the former is
sufficient to commence the thirty day period for consent to
removal while the latter is not.  (Id.)  In support of his
argument, Mr. Wolfe relies primarily upon In re Pharm. Indus.
Average Wholesale Price Litig., 431 F. Supp. 2d 109 (D. Mass.
2006).  There, the court stated that "[e]ven if service were
defective or not complete under New Jersey law, the consent . . .
[to removal by the defectively served defendants] was necessary

22

unless they challenged the service." Id. at 122.  The court offered the following reasoning,

> Defects concerning service of process are waivable. See Fed. R. Civ. P. 12(h)(1). In addition, the right to waive these defects are personal to the party upon whom service of process is attempted. Thus, [removing defendant] cannot complain about any alleged deficiencies about service of process on [non-consenting defendant], and [removing defendant]'s objections to service of process on [non-consenting defendant] are not grounds for failing to secure [non-consenting defendant]'s joinder in the removal notice.

Id. (quoting Seguros Commercial Am., S.A. De C.V. v. Am. President Lines, Ltd., 934 F. Supp. 243, 245 (S.D. Tex. 1996)). If this reasoning is applied, removing defendants would be forced to expend resources seeking the consent of co-defendants who have not been properly served and may never be properly served. Defectively served defendants would be required to challenge service, when otherwise they might not, in order to prevent the thirty day consent period from elapsing despite the "longstanding tradition in our system of justice," whereby "service of process . . . is fundamental to any procedural imposition on a named defendant." Murphy Bros., 525 U.S. at 250.  Federal courts would in turn be compelled to make unguided and ad hoc determinations as to when service, though technically defective, suffices to necessitate the consent of the defectively served defendant.

23

In re Pharm. Indus. is in any event distinguishable on its facts.  First, the three defendants whom the removing defendant claimed had been improperly served did not wish to proceed in federal court and sought to have the case remanded. In re Pharm. Indus., 431 F. Supp. 2d at 122.  Indeed, the court found that the removing defendant "made a material misrepresentation in its notice of removal" in stating that the allegedly improperly served defendants would consent to removal. Id. at 123-24.  Thus, even if service had been effective, the case was subject to remand.  Here, all defendants, including the WVSP and Superintendent Lemmon, consent to removal and desire to proceed in federal court.

Second, in In re Pharm. Indus. plaintiff mailed process to counsel for the three defendants in question and argued that service had been effected under N.J. Ct. R. 4:4-4(c), which provides:

> Optional Mailed Service. Where personal service is required to be made pursuant to paragraph (a) of this rule, service, in lieu of personal service, may be made by registered, certified or ordinary mail, provided, however, that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto.

The removing defendant asserted that service was not effective

24

until the three non-consenting defendants answered the complaint or appeared in response thereto. The court, however, found that "[w]hile service may not be 'effective' under New Jersey law for purposes of obtaining in personam jurisdiction over a party for procuring entry of a default until an answer or appearance, that provision does not govern when service is 'effective' for purposes of triggering the consent requirement of the rule of unanimity." In re Pharm. Indus., 431 F. Supp. 2d at 121. The court also found that mailing process to counsel for the three defendants was likely a valid mode of service under the law of New Jersey. Id. at 121-22. West Virginia law, in contrast, does not contain a provision analogous to N.J. Ct. R. 4:4-4(c). Service by mail is effective only if the summons and complaint are sent by the clerk and the other requirements of W. Va. R. Civ. P. 4(d)(1)(D) and (E) are met. Further, it has not been shown that Mr. Hoyer was empowered to accept service on behalf of the WVSP or Superintendent Lemmon. See supra note 12. It cannot be said, therefore, that service upon the WVSP and Superintendent Lemmon was merely "technically defective." (Memo. in Supp. Mot to Rem. at 4).

This is not to say that technically defective service will never trigger the thirty day consent period. The question

25

is whether service effected while the case is pending in state
court, though technically defective, would suffice under state
law.  As earlier noted, in Murphy Bros., 526 U.S. at 347-48 the
Supreme Court held that under § 1446(b), "a named defendant's
time to remove is triggered by simultaneous service of the
summons and complaint, or receipt of the complaint, 'through
service or otherwise,' after and apart from service of the
summons, but not by mere receipt of the complaint unattended by
any formal service."  In support of its holding, the Court
stated, "[s]ervice of process, under longstanding tradition in
our system of justice, is fundamental to any procedural
imposition on a named defendant."  Id. at 350.  Though Murphy
Bros. dealt with initial notices of removal, as opposed to
consents to removal, both situations are governed by the same
provision, namely, § 1446(b).  There is no reason to believe that
the Court's statement that "the summons continues to function as
the sine qua non directing an individual or entity to participate
in a civil action or forgo procedural or substantive rights," id.
at 351, applies with any less force in the context of consents to
removal as compared to removal itself.

          The Supreme Court of Appeals of West Virginia has held
that "[b]efore substituted service can take the place of, and be

26

equivalent to, an actual personal service, all the requirements of the statute regarding the manner of such substituted service must be strictly complied with." <u>Mollohan v. North Side Cheese Co.</u>, 107 S.E.2d 372, 375 (W. Va. 1959) (quoting <u>Jones v. Crim & Peck, Exrs.</u>, 66 S.E. 367 (W. Va. 1909)). <u>See also</u> <u>McClay & Mountain Top Realty</u>, 435 S.E.2d at 185-86 ("The general principle that where a particular method of serving process is prescribed by statute that method must be followed is especially exacting in reference to the service of process on a corporation defendant. A strict compliance with the statute is necessary to confer jurisdiction of the court over a corporation."); <u>Dierkes v. Dierkes</u>, 268 S.E.2d 142, 145 (W. Va. 1980) ("We agree with these courts which hold that constructive process statutes must be strictly followed."). W. Va. R. Civ. P. 4(d)(1)(C) provides for substituted service upon a defendant's "agent or attorney-in-fact" to be made by "delivering a copy of the summons and complaint." As noted, even assuming Mr. Hoyer qualified as the agent or attorney-in-fact for Superintendent Lemmon and the WVSP, the summonses and complaint were not delivered by personal service to him; instead, they were mailed. Given the West Virginia Supreme Court of Appeals' directive that the requisites of substituted service be strictly complied with, it cannot be said that mailing of the summonses and complaint to Mr. Hoyer

27

sufficed to effect service upon Superintendent Lemmon and the
WVSP, commencing the thirty day time period for consent to
removal.

While removing defendants bear the burden of
establishing the propriety of removal, it is the plaintiff's
burden to establish proper service of process.  See Childress v.
Thompson, 489 S.E.2d 499, 502 (W. Va. 1997) ("It is a well
established rule that the plaintiff or his attorney bears the
responsibility to see that an action is properly instituted.");
United States Blowpipe Co. v. Spencer, 33 S.E. 432, 349 (W. Va.
1899) ("the burden was upon the appellant [plaintiff] to show
that it had properly acquired jurisdiction by service of process
upon said company, or by its voluntary appearance.") (English,
J., dissenting); see also Summers v. McClanahan, 44 Cal. Rptr. 3d
338, 345 (Cal. Ct. App. 2006) ("the burden is on the plaintiff to
prove the existence of jurisdiction by proving . . . the facts
requisite to an effective service.").  Mr. Wolfe has failed to
sustain his burden.  No showing has been made of the authority of
Mr. Hoyer to receive service of process on behalf of
Superintendent Lemmon and the WVSP.  Even if Mr. Hoyer possessed
such authority, service was not effected in a manner consistent
with the West Virginia Rules of Civil Procedure in that the

28

summonses and complaint were not delivered to Mr. Hoyer as
prescribed by Rule 4(d)(1)(C).  Nor was the enclosed "Acceptance
of Service for the Summons and Complaint against D.L. Lemmon and
the West Virginia State Police, for your signature and
appropriate notary" returned by Mr. Hoyer prior to September 25,
2008.  Moreover, when the consents to removal were filed -- on
September 25, 2008 for Superintendent Lemmon and October 1, 2998
for the WVSP -- it was there specified that service of the
complaint was effected by "waiver of service" as to
Superintendent Lemmon and by "waiver of acceptance" by the WVSP,
both as of September 25, 2008.[14]  Mr. Wolfe has not shown that
service occurred at any time prior to that date.  Accordingly,
the court concludes that all consents to removal have been timely

---

[14] While the argument has not been raised by Mr. Wolfe, to
the extent one might contend that Mr. Hoyer somehow waived
service of process on behalf of Superintendent Lemmon and the
WVSP before removal, it is again noted that Mr. Hoyer never
executed and returned the "Acceptance of Service" provided by Mr.
Bailey prior to removal or at any time prior to September 25,
2008.  Mr. Hoyer's statement of August 12, 2008, that he would
"accept service" cannot, on its own, be deemed a waiver of
service.  See Hayhurst v. J. Kenny Transfer Co., 158 S.E. 506,
507 (W. Va. 1931) ("There is nothing more fundamental in the
administration of the law than that a binding personal judgment
may not be rendered against a defendant who has not been served
with process to appear before the court, or who has not
voluntarily waived such process.") (emphasis added); Floyd v.
Gore, 555 S.E.2d 170, 175 (Ga. Ct. App. 2001) (noting that while
a defendant may waive service of process, "[t]he law will not
infer the waiver of an important right unless the waiver is clear
and unmistakable.").

filed and that removal was proper.

V.

It is, accordingly, ORDERED that plaintiff Roger
Wolfe's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this
memorandum opinion and order to all counsel of record.

DATED: April 9, 2009

John T. Copenhaver, Jr.
United States District Judge