UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


ROGER WOLFE,

       Plaintiff,

v.                            Civil Action No. 2:08-01023

PAUL A. GREEN, JASON S. CRANE,
J.K. RAPP, KRISTY L. LAYNE,
D.L. LEMMON, and
WEST VIRGINIA STATE POLICE,

       Defendants.


MEMORANDUM OPINION AND ORDER


       Pending is plaintiff Roger Wolfe's motion for award of

attorneys' fees, costs and expenses, filed December 18, 2009.

Plaintiff seeks a total of $299,560.17 in attorneys' fees,

$37,355.19 in costs, and $52,059.42 in expert witness expenses.[1]


I.


       Mr. Wolfe instituted this action by filing a complaint

in the Circuit Court of Kanawha County, West Virginia on July 21,

_____

       [1] Plaintiff's original fee petition sought $274,538.60 in
attorneys' fees, $34,885.06 in costs, and $52,059.42 in expert
witness expenses.  Plaintiff revised these figures in his reply
brief by adding the fees and costs associated with the reply
brief as well as subtracting the costs associated with
plaintiff's unsuccessful motion to remand.

2008.  Plaintiff's claims stem from allegations that he was severely beaten by several West Virginia State Police Troopers at the State Police barracks in South Charleston, on June 16, 2007. (Pl.'s Memo 1).  Following the beating, plaintiff was taken to the emergency room at Thomas Memorial Hospital, where he claims that Dr. Jason Tackett allowed Trooper Rapp to interrogate plaintiff prior to treating his serious injuries.  (Id. at 2). Defendants contend that plaintiff was not beaten, but rather, sustained his injuries from an accidental fall while he was intoxicated.  (Defs.' Resp. 8).  The parties offer two distinctly different versions of the facts leading to plaintiff's claims. However, inasmuch as the plaintiff has accepted the State Police defendants' Rule 68 offer of judgment, the factual allegations of the parties are no longer at issue and need not be discussed beyond that necessary to an understanding of the reasonableness of the requests for fees and costs.

Plaintiff's ten-count complaint named Trooper Green, Trooper Crane, Trooper Layne, Sergeant Rapp, Dr. Tackett and Emergency Medicine Physicians of Kanawha County, PLLC ("EMP"), as well as the Superintendent of the West Virginia State Police, D. L. Lemmon ("Superintendent Lemmon"), the West Virginia State Police ("WVSP"), and John Does 1-3 as defendants.[2]

---

[2] The complaint states that "[d]efendants John Does 1-3 are persons involved, but presently unidentified in the events set
(continued...)

2

The following claims are set forth: Count I, Violation of 42 U.S.C. § 1983 for Excessive Force (against defendants Green and Crane); Count II, Violation of 42 U.S.C. § 1983 for Unnecessary Infliction of Pain and Suffering (against defendants Green and Crane); Count III, Violation of 42 U.S.C. § 1983 for Failure to Intervene to Prevent the Use of Excessive Force or the Unnecessary Infliction of Pain and Suffering (against defendants Green, Crane, and Layne); Count IV, Violation of 42 U.S.C. § 1983 for Coercive Questioning and Conduct that Shocks the Conscience (against defendant Rapp); Count V, Conspiracy to Violate 42 U.S.C. § 1983 for Coercive Questioning and Conduct that Shocks the Conscience (against defendants Green, Crane, Layne, Rapp, Tackett, and EMP); Count VI Conspiracy to Violate 42 U.S.C. § 1983 (against defendants Green, Crane, Layne, Rapp, Tackett, and EMP); Count VII, Common Law Assault and Battery (against defendants Green, Crane, and Layne);  Count VIII, Common Law Intentional or Negligent Infliction of Emotional Distress (against defendants Green, Crane, Layne, and WVSP); Count IX, Violation of 42 U.S.C. § 1983 for Failure to Train, Supervise, and Have Adequate Policies (against defendants Rapp and Lemmon);

---

[2](...continued)
forth below." (Compl. ¶ 11).  No claims are stated against the John Doe defendants.

and Count X, Common Law Negligent Supervision, Hiring, Training, Discipline, and Retention (against defendants Rapp, Lemmon, and WVSP). Plaintiff's complaint sought both damages and equitable relief, in addition to fees, costs and any other relief the court deems equitable and just. (Id. at 16-17).

Defendants removed on August 25, 2008, citing plaintiff's section 1983 claim as grounds for federal question jurisdiction. Approximately five months after plaintiff's initial settlement offer, the State Police defendants made on September 22, 2009, a Rule 68 offer of judgment to plaintiff for $200,001.01 "plus Plaintiff's reasonable attorneys' fees, expenses, costs or any other fee shift available pursuant to 42 U.S.C. §§ 1983 and/or 1988 incurred to date to be determined by the Court." (Offer of Judgment 1). Plaintiff accepted the defendants' offer and the Clerk entered judgment in favor of plaintiff in accordance with the offer on October 7, 2009.

On October 14, 2009, plaintiff voluntarily dismissed his claims against Dr. Tackett and EMP in this matter. Plaintiff is pursuing those claims in an action pending in Kanawha County Circuit Court. (Pl.'s Mot. for Fees 3); see also Wolfe v. Tackett, No. 08-C-1187 (Cir. Ct. Kan. Cty. Jun. 17, 2008). Plaintiff stipulated to the dismissal of John Does 1-3 on November 2, 2009.

4

Plaintiff filed his fee petition on December 18, 2009.
Along with the petition, plaintiff submitted to the court
affidavits in support of the rate and time calculation for the
requested award.  A brief summary of the affidavits of
plaintiff's counsel is as follows:

> Benjamin L. Bailey:  Mr. Bailey is a partner and co-
> founder of Bailey & Glasser LLP.  He has practiced law
> in Charleston for 29 years.  He has received an "AV"
> rating from Martindale-Hubbell and is listed in
> Chambers U.S.A.'s Guide to America's Leading Lawyers
> for Business.  As one attorney noted in his affidavit,
> Mr. Bailey "has earned his reputation as one of the
> best lawyers in this State."  (Pl.'s Mot. Ex. 6 ¶ 7
> (Simmons Affidavit)).  Mr. Bailey requests a rate of
> $400 per hour.
>
> Jonathan R. Marshall:  Mr. Marshall is an associate at
> Bailey & Glasser LLP.  He graduated from West Virginia
> University ranked third in his class and was admitted
> to the West Virginia bar in October 2007.   Mr.
> Marshall requests a rate of $195 per hour.
>
> Melissa D. Dennis:  Ms. Dennis is a paralegal for
> Bailey & Glasser LLP.  Ms. Dennis requests a rate of
> $125 per hour.
>
> Charles F. Little:  Mr. Little is employed as an
> investigator and business manager with Bailey &
> Glasser, LLP.  He worked in law enforcement for 36
> years as a West Virginia State Trooper and as a Special
> Agent in the Criminal Investigation Division of the
> Internal Revenue Service.  Mr. Little requests a rate
> of $150 per hour.

Plaintiff has also filed several affidavits of counsel
in the relevant market area in support of the rates requested.
Defendants have responded with a statement of the hourly rates

5

and fees charged by its counsel in this case and one affidavit
from one of Trooper Green's attorneys.

### II.   Recovery of Post-Offer Fees, Costs, and Expenses

As an initial matter, the parties dispute the relevant
time frame for which plaintiff may recover attorneys' fees,
expenses, and costs under the terms of the Rule 68 judgment.
Plaintiff seeks payment for those attorneys' fees, expenses, and
costs incurred through completion of the briefing for plaintiff's
fee petition.  Defendants contend that the language of the offer
of judgment limits plaintiff's recovery to those attorneys' fees,
costs, and expenses incurred prior to the offer of judgment.

As noted, the offer of judgment states that plaintiff
may recover "reasonable attorneys' fees, expenses, costs or any
other fee shift available pursuant to 42 U.S.C. §§ 1983 and/or
1988 incurred to date to be determined by the Court."  (Offer of
Judgment 1).  Plaintiff contends that this language is ambiguous
inasmuch as it could be reasonably interpreted to mean that the
court is to determine the date to which the plaintiff may
recover.  (Pl.'s Reply at 15-16).  Plaintiff suggests that had
defendant intended otherwise, a comma should have followed "to

6

date" in order to clearly indicate that the date would not be determined by the court.  (Id.)  Inasmuch as ambiguities in an offer of judgment must be construed strictly against the offeror, plaintiff contends that the offer of judgment should be construed as enabling the court to determine the cut-off date for plaintiff's recovery.  (Id. at 17).

Defendants disagree with plaintiff's interpretation of the language within the offer of judgment.  Defendants assert that the offer of judgment unambiguously placed a chronological restriction on those fees recoverable by plaintiff to those accrued prior to the offer.  In response to plaintiff's grammatical argument, defendants aptly contend that the offer clearly allowed only those fees "incurred to date to be determined by the Court" rather than fees "incurred to a date to be determined by the Court."  (Surreply 3 (emphasis in original)).

Based on the language of the offer, the court finds the offer of judgment to be unambiguous on the point.  A plain reading indicates that the court is to determine plaintiff's reasonable attorneys' fees, expenses, and costs incurred "to date" rather than to determine the date itself.  The ambiguity suggested by plaintiff requires a stretched interpretation beyond

7

the language's clear meaning.  Accordingly, the court will consider plaintiff's fee petition with regard to only those amounts incurred through September 22, 2009.  This results in a subtraction of $80,988.45 in attorneys' fees, $6,487.66 in costs, and $5,087.60 in expenses.  (Pl.'s Reply 2; see also Pl.'s Reply Exs. 1, 3, and 4).  Excluding these post-offer amounts, plaintiff seeks $218,571.72 in attorneys' fees, $30,867.53 in costs, and $46,971.82 in expenses.  (Id.).

### III. Attorneys' Fees

### A.  Governing Standard

Courts calculating an award of attorneys' fees in a fee-shifting case must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.  Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009)(citing Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)).  "The lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny, 130 S. Ct. 1662, 1672 (2010)(emphasis in

original).   In determining what constitutes a "reasonable" number of hours and their billing rate, courts consider the following twelve factors identified in Johnson v. Georgia Highway Express, Inc.:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44.   See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989). After establishing the lodestar amount, the court may subtract any fees for time spent on unsuccessful claims unrelated to successful claims made by the party.   Id.

When calculating reasonable fees, establishing the hourly rate is generally the critical inquiry.   Westmoreland Coal Co. v. Cox, 602 F.3d 276, 289 (4th Cir. 2010) (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)(internal citations and quotations omitted)).   The fee applicant bears the burden of

establishing the reasonableness of the requested rate.  Id.

> In addition to the attorney's own affidavits, the fee
> applicant must produce satisfactory specific evidence
> of the prevailing market rates in the relevant
> community for the type of work for which he seeks an
> award.  Although the determination of a "market rate"
> in the legal profession is inherently problematic, as
> wide variations in skill and reputation render the
> usual laws of supply and demand largely inapplicable,
> the Court has nonetheless emphasized that market rate
> should guide the fee inquiry.

Id. (quoting Plyler, 902 F.2d at 277 (internal citations and

quotations omitted)).  In determining the market rate, the court

should consider evidence of what attorneys earn for performing

similar services in similar circumstances, "which, of course, may

include evidence of what the plaintiff's attorney actually

charged his client."  Id. (quoting Depaoli v. Vacation Sales

Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007)).  Examples of

the specific evidence that courts have found "sufficient to

verify the prevailing market rates are affidavits of other local

lawyers who are familiar both with the skills of the fee

applicants and more generally with the type of work in the

relevant community."  Id. (quoting Robinson, 560 F.3d at 245).


B.  Calculating the Lodestar Amount


        Plaintiff seeks fees for work performed by two

attorneys, a paralegal, and an investigator.  (Pl.'s Reply Ex.

A). Plaintiff's request a lodestar award as follows:

| TIMEKEEPER | RATE | HOURS | LODESTAR |
|---|---|---|---|
| Benjamin Bailey, attorney | $400 | 162.10 | 64,840.00 |
| Jonathan R. Marshall, attorney | $195 | 565.40 | 110,253.00 |
| Charles F. Little, investigator | $150 | 54.8 | 8,220.00 |
| Melissa D. Dennis, paralegal | $125 | 374.10 | 46,762.50 |
| TOTAL | | 1,156.40 | 230,075.50 |
| Voluntary 5% Reduction | | | (11,503.78) |
| TOTAL | | | $218,571.72 |

In support of these figures, plaintiff's counsel has provided the court with time sheets summarizing the number of hours billed along with brief descriptions of the work performed.  (Pl.'s Mot. for Fees Ex. 1).


1.  Reasonable Hourly Rate


Of the twelve Johnson factors, four factors are particularly relevant to the court's determination of reasonable hourly rates: the customary fee for like work; the experience, reputation and ability of the attorneys; attorneys' fees awards in similar cases; and the amount in controversy and the results obtained.  By weighing these factors together with the evidence

11

submitted by the parties, the court may determine the reasonable hourly rates to be used in calculating the lodestar amount.

a.   Customary Fee for Like Work

The fifth of the twelve <u>Johnson</u> factors considers the customary fee for like work, specifically the customary fee "for similar work in the community." <u>Johnson</u>, 488 F.2d at 718. As noted above, it is the fee applicant's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." <u>Westmoreland Coal Co.</u>, 602 F.3d at 289 (quoting <u>Plyler</u>, 902 F.2d at 277 (internal citations and quotations omitted)).

Plaintiff's counsel has provided affidavits from Mr. Bailey, Mr. Marshall, Ms. Dennis, and Mr. Little stating that their requested hourly rates reflect the rates that they have actually billed hourly-paying clients. (Pl.'s Mot. for Fees Ex. E, Ex. O, Ex. P, and Ex. G). In addition to considering those affidavits from the fee applicants themselves, the court may use "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" to verify the prevailing market rate. <u>Robinson</u>, 560 F.3d at 245. Plaintiff's counsel has provided affidavits from several prominent Charleston attorneys

12

with many years of experience stating that they believed the
rates charged by plaintiff's counsel to be reasonable and in
accordance with the prevailing market rate for Charleston, West
Virginia.[3]

        Defendants contend that plaintiff's affidavits from
local lawyers are not evidence of the customary local fee.
Defendants note that none of the lawyers state they bill at
hourly rates equal to those requested by plaintiff's counsel and
only one of the lawyers is a civil rights attorney with
significant experience in this type of case.  (Defs.' Resp. 34-
35).  Indeed, none of the attorneys set forth their own hourly
rates, though Mr. Simmons, the civil rights attorney, indicated
that he would charge more than $250 an hour for a case like this.
(Pl.'s Reply Ex. 10 ¶ 5).  Mr. Simmons was also the only attorney
to provide a range for attorneys with credentials similar to
those in this case.  He suggested that a reasonable hourly rate

_____

    [3] (Pl.'s Mot. for Fees Ex. F (Lonnie C. Simmons: civil
rights attorney who has practiced law for over 25 years); Ex. H
(Robert B. Allen: practiced law in Charleston for over 35 years);
Ex. I (Webster J. Arceneaux, III: practiced law in Charleston for
over 25 years); Ex. J (W. Henry Jernigan, Jr.: practiced law in
Charleston for over 25 years); Ex. K (Kent J. George: practiced
law in Charleston over 20 years); Ex. L (David Grubb: practiced
law in Charleston for over 20 years); Ex. N (John W. Barrett: a
member of the firm of plaintiff's counsel who has practiced law
in Charleston for 12 years).  See also (Pl.'s Reply Ex. 10
(Lonnie C. Simmons); Ex. 11 (Roger A. Wolfe: plaintiff who has
practiced law in Charleston for over 36 years).

for partners with credentials similar to Mr. Bailey's would be in
the range of $295-$400 an hour.  (<u>Id</u>.).  He suggests a range of
$195-$250 for associates involved in this type of case.  (<u>Id</u>.).
Mr. Simmons placed the rate requested by Mr. Bailey at the
uppermost end of the reasonable range for partners and the rate
requested by Mr. Marshall at the lowermost end of the range for
associates.  The court finds the ranges provided by Mr. Simmons
to be helpful.  Overall, the affidavits provided by plaintiff,
while entitled to consideration, would have merited greater
weight had the local attorneys also testified as to their own
hourly rates.

      As additional evidence, plaintiff has identified eleven
state court cases in which the court awarded attorneys' fees
based on hourly rates ranging from $250 to $400.  (Pl.'s Memo.
19-20).  Mr. Bailey has been awarded fees at an hourly rate of
$250 in a state court case tried over seven years ago.  (Pl.'s
Mot. Ex. 13 ¶ 7).  However, plaintiff has not suggested that the
state court cases are in any way similar to the case at hand.
Defendants, on the other hand, have provided only the rates at
which their attorneys charged in this case, together with an
invoice in which Mr. Arceneaux billed at a $250 hourly rate in
2009.

b.    Experience, Reputation and Ability

In considering the ninth Johnson factor relating to the experience, reputation, and ability of the attorneys, it is noted that Mr. Bailey is an experienced practitioner who is highly rated in Martindale-Hubbell, listed in Chambers U.S.A.'s Guide to America's Leading Lawyers for Business, and is said to have earned his reputation as one of the best lawyers in the State. Mr. Marshall is a young lawyer of promising credentials who graduated third in his law school class.  Defendants, however, contend that plaintiff's counsel has not previously billed or received the requested rates in cases similar to this one, and thus, the rates are not indicative of the customary fees for the type of work performed in this case.  (See, e.g., Def. Green's Resp. at 34-38)  Plaintiff's counsel acknowledge that it has been at least five years since their last involvement in a civil rights case.  (Defs.' Resp. Ex. N (Pl.'s Resp. to Def. Green's Interrogs. No. 11)).  Under the ninth factor, typically "fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." Johnson, 488 F.2d at 718-19.  Defendants suggest that this experience differential is practice-specific and, thus, counsel may not demand rates appropriate for experienced civil rights attorneys when they do not have a significant practice in that area.

15

Rather than relying on the affidavits provided by plaintiff's counsel, defendants suggest that the court should adopt the prevailing market rate as determined by the court in the unpublished decision in Constitution Party of West Virginia v. Jezioro, 2009 WL 2843374, at *7 (N.D. W. Va. Aug. 31, 2009), which the court next considers.

    c.  Awards in Similar Cases

        Defendant's reliance on Jezioro corresponds with the court's consideration of the twelfth and final Johnson factor, awards in similar cases.  Alleging violations of their rights under the First and Fourteenth Amendments of the United States Constitution and under Article III, Sections 1, 3, and 7 of the West Virginia Constitution, plaintiffs in Jezioro sought attorneys' fees pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d).  Id. at *1.  Plaintiffs' counsel in Jezioro provided the court with their hourly billing rates, but did not submit any affidavits from local attorneys regarding the prevailing market rate.  Id. at *7.  The court found that the information provided by the plaintiffs was not particularly comprehensive and proceeded to review other fee awards in similar cases of which four were in federal district courts (including three in West Virginia and one in Virginia) in the last ten

16

years.   Those four cases involved the Truth in Lending Act, Fair
Labor Standards Act, Wage Payment and Collection Act, and the
False Claims Act.   Jezioro found hourly fees allowed in those
cases as follows: 2000 TILA, $250; 2007 FLSA, $250; 2008
WCPA/FLSA, $300; and 2009 FCA, $310.   Id.

      The court in Jezioro, noting that the claimant there
had filed no affidavits from local attorneys for its
consideration, found $250 to be a reasonable rate for an
experienced constitutional law attorney with 25 years experience,
$215 an hour to be a reasonable rate for an attorney possessing a
"large amount of litigation experience, but no particular
expertise in constitutional civil rights litigation," and $150 an
hour to be a reasonable rate for an associate attorney with five
years of practicing law in West Virginia.   Id.  Defendants
request a rate for Mr. Bailey of $220 an hour and Mr. Marshall
$130 an hour.  (Defs.' Resp. 38).

            d.   The Amount in Controversy and the Results Obtained

      The eighth Johnson factor considers the amount in
controversy and the results obtained.  Here, defendants suggest
that the fees sought should be reduced inasmuch as the settlement
award was significantly less than that sought in the complaint
and plaintiff's initial settlement demand.  (Defs.' Resp. 41).

17

Defendants characterize the efforts of plaintiff's counsel as having achieved "a very low degree of success." (<u>Id.</u> (quoting <u>McKnight v. Cir. City Stores, Inc.</u>, 14 Fed. Appx. 147, 151 (4th Cir. 2001)).

In contrast, plaintiff's counsel provides an affidavit from Mr. Simmons, the Charleston attorney who has represented plaintiffs in civil rights cases for approximately 25 years, stating that plaintiff's settlement "is the highest non-death police brutality settlement or verdict I know of in the State of West Virginia." (Pl.'s Reply Ex. 10 ¶ 4). Mr. Simmons further notes that:

> Police brutality cases are difficult to win because juries tend to side with the police over accused criminals, juries are reluctant to award significant damages against police defendants and governmental entities, and there are a number of legal and procedural hurdles and defenses to overcome before a plaintiff in one of these cases is permitted to go forward.[4]

<u>Id.</u>

Interestingly, defense counsel, who have extensive experience in the civil rights judicial arena, do not in their

---

[4] In <u>City of Riverside v. Rivera</u>, the United States Supreme Court upheld the fee award made by a district judge who determined that the size of the damages award did not imply that plaintiff's success was limited. 477 U.S. 561, 571. This conclusion was reached in part because of "'the general reluctance of jurors to make large awards against police officers.'" <u>Id.</u> (quoting district court decision).

surprely take exception to Mr. Simmons' assessment.  Nor does the
court.  The result obtained here was for the plaintiff surely a
good one consisting not only of damages of $200,000 but a
doubling of that figure by agreement to pay attorney fees, costs,
and expenses.  The result achieved is particularly commendable
when one takes into account plaintiff's only witnesses at the
scene.  They consist of the highly intoxicated plaintiff who
lacked memory of the incident and two detainees who heard and
observed relatively little and whose credibility in the eyes of a
jury would be diminished inasmuch as they were in police custody
at the time.

        e.  Conclusion

        Based on the foregoing, the court finds that the
requested hourly rates of plaintiff's counsel exceed the
prevailing market rate, but that the evidence provided by
plaintiff justifies a rate above that suggested by defendants.
While not being primarily a civil rights attorney, Mr. Bailey has
significant litigation experience and a well-earned enviable
reputation in the community and the State.  His work in this case
appears to have been confined to the role of lead counsel, with
Mr. Bailey rendering only about one-fifth of the total attorney
time and the other four-fifths being borne by associate counsel,

Mr. Marshall.  The court finds that Mr. Bailey's experience and ability merit a fee award of $325 per hour in this case.  As for Mr. Marshall, the court finds that an associate with less than three years of experience but with the ability reflected by his performance in this case may reasonably be awarded $140 per hour.

With regard to the request for a rate of $125 per hour for Ms. Dennis, the defendants suggest a paralegal rate of $85 per hour.  Steptoe's billing records reveal that it charges $93 per hour for paralegal work.  (Pl.'s Resp., Ex. 5 at 2).  The court awards a rate of $100 per hour for paralegal work in this case.  As for Mr. Little, for whom the request is $150 per hour, he has excellent qualifications for his role as an investigator with extensive experience.  The court finds that his background merits an award of $125 per hour.

2.  Reasonable Number of Hours

As the first <u>Johnson</u> factor, it is the fee applicant's burden to establish the number of hours worked.  <u>Hensley</u>, 461 U.S. at 437.  "The number of hours must obviously be adjusted to delete duplicative or unrelated hours.  At bottom, the number of hours must be reasonable and must represent the product of

20

'billing judgment.'"  <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175 (4th Cir. 1994)(quoting <u>Hensley</u>, 461 U.S. at 437). In the affidavits provided to the court, plaintiff's counsel stated that they had reviewed the billing records and that the time billed accurately reflected the time spent on this case. Defendants have multiple objections to the manner in which plaintiff's counsel billed for this litigation.[5]

First, defendants object to plaintiff's counsel engaging in a practice known as block-billing.  Review of the timesheets submitted by plaintiff reveals that defendants' objection is warranted.  Rather than specifying the amount of time spent on individual tasks, the timekeepers in a number of instances grouped many different tasks together and recorded the total time expended on those tasks as one lump entry.  Block-billing makes it difficult for the court to determine whether work performed was duplicative, unnecessary or inefficient. <u>Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.</u>, 613 F. Supp. 2d 670, 735 (D. Md. 2009) (citing <u>In re Olson</u>, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989), <u>vacated</u> <u>and</u> <u>remanded</u> <u>on</u> <u>other</u> <u>grounds</u>, 606 F.3d 1353 (Fed. Cir. 2010).  Other courts

---

[5] Inasmuch as defendants' objected to plaintiff's request for fees relating to the unsuccessful motion to remand, plaintiff has withdrawn the request for these fees and, thus, the court need not address the issue.

encountering block-billing in fee petitions have chosen to reduce
the attorneys' fees awarded by a percentage.  <u>Leviton Mfg. Co.,
Inc.</u>, 613 F. Supp. 2d at 738 (10% reduction of lodestar amount to
account for block-billing and some documentation deficiencies);
<u>Gratz v. Bollinger</u>, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (a
10% reduction due to attorneys' block-billing and vague entries);
<u>Oklahoma Natural Gas Co. v. Apache Corp.</u>, 355 F. Supp. 2d 1246,
1264 (N.D. Okla. 2004)(a general 15% reduction of the revised
lodestar amount to compensate for block-billing, inter-office
conferences, excessive attorney time, and duplication of
efforts); <u>Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.</u>,
277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (flat 15% reduction
for block-billing and other defects in attorneys' timekeeping).
While the total number of hours requested by plaintiff's counsel
does not appear to be facially unreasonable, the court
nevertheless finds that a ten-percent reduction of the total
attorneys' fee award is warranted by counsels' practice from time
to time of block-billing.

       Second, defendants object to the descriptions provided
by plaintiff's counsel as being so vague as to make it impossible
to determine if the billing is reasonable.  Our court of appeals
has "frequently exhorted counsel to describe specifically the

tasks performed." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31
F.3d 169, 180 (4th Cir. 1994)(expressing concern over
descriptions stating simply "research" or "letter to client").
After reviewing the long list of descriptions that defendants
find too vague, the court finds that plaintiff's counsel
generally provided sufficient descriptions of the work performed.

       The items describing the work performed by Ms. Dennis
as "review and profile documents" were the most frequently
objected to by the defendants as being too vague and the court is
inclined to agree with the defendants in this regard.  Those
entries simply stating "review and profile documents" without
further explanation are not sufficient for the court to determine
whether the time spent was reasonable.  While the court
recognizes that litigation often requires reviewing and profiling
documents, something more is needed from counsel in order to
establish that the time spent was reasonable and not duplicative.
Simply adding a description of the nature of the documents will,
in most instances, be sufficient.  Based on the foregoing, the
court believes a twenty percent reduction is appropriate for
those hours described simply as "review and profile documents."
Ms. Dennis billed approximately 31.2 hours in 65 individual
entries labeled "review and profile documents" without sufficient

23

additional information to clearly describe the work performed. Applying a twenty percent reduction to these hours results in a 6.24 hour reduction from the overall hours billed by Ms. Dennis.

Third, defendants contend that much of the time billed on the timesheets was billed by the wrong timekeepers, meaning that the timekeepers were over-qualified for the nature of the work being performed. (Defs.' Resp. 22). Defendants object to a wide-range of the tasks performed by each of the members of the plaintiff's legal team as being "clerical work performed by paralegals or attorneys, paralegal work by attorneys, and associate work by partners." (Id.). After reviewing each of defendants' specific objections on this score, the court did not find any items in support of defendants' objection. As a general matter, it appears that attorney time was allotted economically between the two attorneys, with the senior partner, Mr. Bailey, consuming only 22% of their total time, and with the remaining 78% performed by the associate, Mr. Marshall. On the whole, the court finds that plaintiff's counsel performed reasonable tasks for their respective skill levels.

In a similar vein, defendant's fourth objection claims that plaintiff's counsel frequently billed the work of multiple timekeepers when only one was appropriate. (Defs.' Resp. 23).

Specifically, defendants point out that Mr. Bailey and Mr.
Marshall attended six depositions together and that Mr. Bailey,
Mr. Marshall, Ms. Dennis, and Mr. Little billed approximately six
hours each to attend a focus group together on April 23, 2009.
(Id.).  District courts have discretion to reduce requested hours
because of overstaffing of attorneys.  In two cases, our court of
appeals has upheld the reduction of attorneys' fees when the
district court discerned that the efforts of more than one
attorney were duplicative.  Trimper, 58 F.3d at 76; Daly v. Hill,
790 F.2d 1071, 1080 (4th Cir. 1986) (reducing request for 47
hours expended in depositions to 25 hours when another attorney
was primarily responsible for the depositions).  Once again,
counsel is expected to exercise the proper degree of billing
judgment in its request for fees.

Here, however, the court does not find that the
attendance of Messrs. Bailey and Marshall were unreasonable or
duplicative.  As stated by Mr. Bailey in his affidavit, "Mr.
Marshall took or defended 17 depositions by himself" and Mr.
Bailey attended only those six depositions "that warranted extra
attention -- the deponents were Roger Wolfe, his wife Gwen Wolfe,
Alvin Emch and Michael Foster of Jackson Kelly, and Richard Lee
Collins and Richard Ray Null, two detainees present in a room

25

adjacent to where Mr. Wolfe was beaten." (Pl.'s Fee Petition Ex.
E ¶ 22). As stated, Mr. Marshall, who bills at the lower hourly
rate, handled seventeen of the depositions alone. As noted by
Mr. Bailey in his affidavit, at least four defense attorneys were
present at every deposition. (Id.). It certainly appears
reasonable to have a litigator with significantly more experience
than Mr. Marshall attend with him at the depositions of those key
individuals whose testimony is central to the litigation.

Similarly, the court does not find counsel's attendance
at the focus group to be extreme or excessive. When preparing
for litigation, there are instances in which counsel works as a
team rather than individually and this reasonably appears to fall
within that category.[6] Accordingly, the court finds that
plaintiff's counsel exercised reasonable billing judgment with
regard to the defendants' fourth objection.

Fifth, defendants assert that plaintiff's counsel
billed time for tasks that were either unnecessary or took longer

_____

[6]The focus group appears to be an analogous, though more
economical, alternative to a mock trial. Both types of
expenditures have been sanctioned by other courts. See, e.g.,
Rozell v. Ross-Holst, 576 F. Supp.2d 527, 540 (S.D.N.Y. 2008)
("It is entirely proper, however, to bill a client for a mock
trial exercise devoted to the case at hand. . . . Consequently,
no reduction shall be made for time spent on the mock trial.");
Finkelstein v. Bergna, 804 F. Supp. 1235, 1239, 1258-59 (N.D.
Cal. 1992) (allowing fees and costs associated with one mock
trial and focus group, including employment of high-caliber
attorney to act as mock opposing counsel).

than they should have.  Specifically, defendants contend that plaintiff's counsel billed time for research that experienced section 1983 attorneys would not have needed to conduct. Defendants contend that the timesheets reflect at least a 35% overcharge for most tasks and warrants an across-the-board reduction of the fees requested.  The defendants take particular exception to plaintiff's counsel having devoted approximately 35 hours researching and drafting the complaint.[7]  The bulk of this time was spent by the associate, at the lower rate, and resulted in an extensive ten-count complaint that was so well crafted that no motion to dismiss was filed by any party.

The two plaintiff's attorneys in this case have requested payment for a total of 727.5 hours, reduced by 10% as set forth above to 654.75 hours, through September 22, 2009.  The defendants' attorneys have acknowledged expending some 970.4 hours through September 24, 2009, rendered by lawyers from the Steptoe firm and the Pullin firm alone.  In addition, there is substantial unaccounted for time by two more defense lawyers who are salaried by the state.  In comparison, the plaintiff's

---

[7] Defendants state that plaintiff's counsel "billed as much as 44.5 hours drafting the complaint."  (Defs.' Resp. 25).  The court finds that several of the hours cited by defendants relate solely to service of the complaints and not to the drafting of the complaint itself.

attorney time appears quite reasonable.  The attorney time
requested by the plaintiff does not appear to be excessive beyond
the ten-percent block billing deduction already assigned.

Sixth, defendants contend that plaintiff's counsel
improperly included a significant amount of time billed
exclusively with regard to the pending state action against the
medical provider defendants.  Plaintiff is currently involved in
a related state action against Dr. Jason A. Tackett, EMP, and
John Does 1-3.  See Wolfe v. Tackett, No. 08-C-1187 (Cir. Ct.
Kan. Cty. Jun. 17, 2008).  The medical provider defendants were
originally named in the instant case, and the parties did not
jointly stipulate to their dismissal until October 14, 2009,
after this case had otherwise settled.  Defendants contend that,
inasmuch as the plaintiff did not prevail against the two medical
provider defendants, the fees sought must be reduced accordingly.
(Defs.' Resp. 27 n. 5).  The defendants overlook the reality that
those two defendants were named as co-conspirators with all the
other defendants in Counts V and VI and that their role was
relevant to some of the claims in the other counts whether they
were parties or not.

Moreover, plaintiff's claims arise out of a common core
of facts that are not easily separable into discrete claims.

28

Plaintiff alleges that Dr. Tackett knowingly allowed defendant Rapp to interrogate and coerce statements from the plaintiff rather than immediately treating him for his life-threatening injuries.  (Compl. ¶ 28).  Plaintiff further alleges that the hospital released plaintiff to the defendants' custody notwithstanding the fact that he had sustained serious injuries and severe head trauma.  (Id. at ¶ 34).  As alleged, plaintiff's conspiracy claims are not simply "spliced" together in an attempt to garner federal fee shifting.  Plaintiff alleges specific actions taken by the medical provider defendants that were done in furtherance of a conspiracy with the state troopers. Accordingly, the court declines to find that plaintiff's counsel improperly billed for those items directly related to the litigation against the State Police defendants.

In summary, the court finds that a ten-percent reduction of the total number of hours will serve to remedy the instances of  block-billing found in plaintiff's counsel's timekeeping.  Additionally, the hours billed by Ms. Dennis and attributed to "review and profile documents" without sufficient further explanation have been reduced by twenty percent.  The court's reductions will be made in lieu of the voluntary five-percent reduction suggested by plaintiff.

29

Accordingly, the lodestar amount based on the reasonable rates of compensation multiplied by the reasonable number of hours[8] expended is as follows:

| TIMEKEEPER | REASONABLE HOURLY RATE | REASONABLE NUMBER OF HOURS EXPENDED | LODESTAR AMOUNT |
|---|---|---|---|
| Benjamin Bailey, attorney | $325 | 145.89 | 42,414.25 |
| Jonathan R. Marshall, attorney | $140 | 508.86 | 71,240.40 |
| Charles F. Little, investigator | $125 | 49.32 | 6,165.00 |
| Melissa D. Dennis, paralegal | $100 | 331.07 | 33,107.00 |
| TOTAL | | 1,035.14 | 152,926.65 |

C. Adjustments to the Lodestar Amount Based on Consideration of the Remaining Factors

The fifth, eighth, ninth, and twelfth Johnson factors were addressed by the court when determining the reasonable hourly rates for calculating the lodestar provided above.  There is a strong presumption that the lodestar figure is reasonable and the remaining factors are only relevant insofar as they

---

[8] The reasonable number of hours expended are the number of hours accrued prior to the offer of judgment less the 10% reduction for block-billing and the 20% reduction of certain hours billed by Ms. Dennis as discussed above.

30

justify a change.  Perdue v. Kenny A. ex rel. Winn, 130 S. Ct.
1662, 1673 (2010).  While the court has already incidentally
dealt with a number of the remaining Johnson factors, it will
address them briefly.

    1.  Novelty and Difficulty of the Questions Raised

      With regard to the second Johnson factor, defendants
contend that plaintiff alleged a "vanilla excessive force case
against a few police officers with uncomplicated facts" that
presents neither difficult nor novel questions.  (Defs.' Resp.
30).  And so, defendants request a decrease in the rates of
plaintiff's counsel to below that of experienced local section
1983 attorneys.  In contrast, plaintiff asserts that the case
involved issues beyond those normally associated with civil
rights cases.  Among these issues, plaintiff contends defendants'
obstructed the discovery process.  Also cited is the inability of
plaintiff to remember the assault and other events occurring on
the night in question, "which required Plaintiff's counsel to
rely heavily on witness testimony to piece together the events
the night of the beating."  (Pl.'s Memo. 13).  Adding further
difficulty, the only witnesses to the alleged assault were the
State Police defendants and several detainees in police custody

at the time.  "The information provided by these two sets of witnesses conflicted, thus pitting the credibility of police officers against the credibility of those accused of crimes." (Pl.'s Memo 14).

Though no novel legal questions are presented, plaintiff's counsel was confronted with the difficult task of facing down an array of respected state troopers in a case in which plaintiff was without a single eyewitness whose credibility was not subject to formidable attack.  While the obstacles plaintiff faced in garnering facts to prove his case are perhaps not so exceptional overall as to justify an upward departure from the lodestar amount, they surely do not support a reduction.

   2.  Skill Required to Properly Perform the Legal Services
       Rendered

When considering this third factor, courts are to "closely observe the attorney's work product, his preparation, and general ability before the court."  <u>Johnson</u>, 488 F.2d at 718. As noted above, Mr. Bailey's exemplary qualifications and reputation are widely-known.  His law firm is also well-regarded in the community.  There is no question that plaintiff's counsel possessed the requisite skills to properly pursue plaintiff's claims.

Nevertheless, defendants contend that plaintiff's rates should be reduced because plaintiff's counsel:  (1) filed an excessively detailed complaint, (2) failed in their motion to remand, (3) failed to achieve the total recovery they boasted the case was worth, and (4) failed to conform their billing statements to the standards set out in case law.  (Defs.' Resp. 31-32).  The court finds that these contentions are insufficient to justify reduction of the rates sought by plaintiff's counsel beyond that already imposed by the court.  As to plaintiff's carefully crafted complaint, it is now settled that a complaint providing only "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must provide sufficiently "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 562-63).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  Counsel should not be faulted for a reasonable measure of expansiveness when it comes to the operative pleading.

33

With respect to the failed motion to remand, plaintiff has already chosen to forego the fees related thereto.  As discussed above, plaintiff's counsel sustained percentage reductions of their fees for block-billing and vagueness in their billing entries.  There is no reason to duplicate those necessary reductions under this factor.  Finally, it would come as a surprise to no one that opening demands for settlement in tort cases frequently  bear little resemblance to the ultimate settlement or judgment amount, if any.  See Bostic v. Am. Gen. Finance, Inc., 87 F. Supp. 2d 611, 617 n. 13.


3.  The Remaining Johnson Factors


The remaining Johnson factors do not loom large. The fourth factor encompasses the "dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." Johnson, 488 F.2d at 718.  While Mr. Bailey states in his affidavit that his firm declined taking a new case "in large part" because of potential conflicts of interest involving the

plaintiff, he has not indicated the nature of the case, whether counsel was to be compensated on a contingent or non-contingent basis, or what other factors played into the decision to refuse the other case.  (Pl.'s Resp. Ex. E ¶ 27).  Without more information, the court concludes that no adjustment of the lodestar figure is called for on this ground.

The sixth factor involves the fixed or contingent nature of the fee agreement.  Johnson, 488 F.2d at 718. Plaintiff's counsel entered into a contingency fee agreement with plaintiff with the further understanding that, if plaintiff prevailed, they could, instead, potentially recover fees and costs through application of section 1988(b).  Plaintiff's counsel took the risk that, absent a recovery by settlement or verdict, they would not only have devoted many hundreds of hours to plaintiff's case without compensation but would have incurred potentially unreimbursable costs and expert expenses amounting as here to $30,867.53 and $46,971.82, respectively.  This factor firmly fortifies the reasonableness of the lodestar rates earlier found.

The seventh Johnson factor considers occasions when the priority of a case delays counsel's other legal work or when new counsel is called in to handle matters at a late stage in the

proceedings.  Johnson, 488 F.2d at 718.  Here, there is no indication that either of these events came to pass, and thus, the seventh factor does not warrant an adjustment of the lodestar amount.

The tenth factor is designed to consider the hardships faced by civil rights attorneys in their efforts to eradicate discrimination.  Johnson, 488 F.2d at 719 (citing NAACP v. Button, 371 U.S. 415, 443 (1963).  While there may very well have been disincentives for counsel in taking plaintiff's case, they are not the type of hardship that is meant to be addressed by the tenth factor.

The eleventh Johnson factor considers that a "lawyer in private practice may vary his fee or similar work in light of the professional relationship of the client with his office." Johnson, 488 F.2d at 719.  Both parties agree that this factor is not applicable in this instance as plaintiff's counsel did not discount the rate provided to plaintiff in expectation of future employment by him as a client.

Inasmuch as there were no further adjustments necessary to the lodestar amount based on the remaining factors, the court awards plaintiff the lodestar amount set forth above, $152,926.65, in attorneys' fees.

V.  Costs


The parties do not dispute that plaintiff is entitled to the recovery of costs pursuant to the defendants' Rule 68 Offer of Judgment.  Rather, defendants contend that plaintiff's requested costs are unreasonable.  The costs requested by plaintiff are as follows:[9]

| REQUESTED COSTS | |
| --- | --- |
| Investigative Services | $465.34 |
| Photocopies | $8,275.43 |
| Postage | $173.05 |
| Facsimiles | $32.00 |
| Fed Ex | $196.78 |
| Filing and Service Fees | $80.00 |
| Records Fees | $1,369.05 |
| Travel Expenses | $4,957.66 |
| Focus Group | $4,778.96 |
| Deposition Transcripts and Services | $5,785.47 |
| Legal Research | $4,053.79 |
| Mediation Fee | $700.00 |
| TOTAL | $30,867.53 |

Defendant has two objections to plaintiff's requested costs.  First, defendants contend that they should not have to pay those costs associated with the medical provider defendants

---

[9] These are the requested costs that were incurred through September 22, 2009.

inasmuch as a fee-shifting defendant should not be made to pay
for the plaintiff's efforts to sue a non-fee-shifting defendant.
(Defs.' Resp. 45).  Defendants made a similar argument with
regard to time billed that related to the medical provider
defendants.  The court dispenses with plaintiff's objection in
the same way.  In this case, plaintiff's claims involved a common
core of facts and related legal theories that make allocation of
the fees and costs amongst the defendants not only unmanageable
but unnecessary and unwarranted.

        Second, defendants claim that the court should exclude
those costs that are properly characterized as overhead and,
thus, not recoverable.  (Id.).  Specifically, defendants claim
that the costs for online legal research are properly excluded
from plaintiff's recovery.  While our court of appeals has yet to
address the issue, other circuits generally permit the recovery
of expenses for online legal research through fee-shifting
statutes.  See Invessys, Inc. v. McGraw-Hill Cos., 369 F.3d 16,
22 (1st Cir. 2004)(holding computer-assisted research should be
reimbursed under fee-shifting statutes "so long as the research
cost is in fact paid by the firm to a third-party provider and is
customarily charged by the firm to its clients as a separate
disbursement"); Arbor Hill Concerned Citizens Neighborhood Ass'n
v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004)(holding
online legal research may be recovered under fee-shifting

statutes so long as the firm bills these costs to its paying clients); <u>Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.</u>, 460 F.3d 1253, 1258 (9th Cir. 2006)(allowing recovery of reasonable charges for computerized research if separate billing for such expenses is the prevailing practice in the community); <u>Case v. Unified Sch. Dist. No. 233</u>, 157 F.3d 1243, 1258 (10th Cir. 1998)(allowing recovery of online legal research expenses as expenses normally billed in addition to attorneys' fees); <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 975 (D.C. Cir. 2004)(granting award of online legal research charges because "such services presumably save money by making legal research more efficient"); <u>Montgomery v. Aetna Plywood, Inc.</u>, 231 F.3d 399, 409 n. 3 (7th Cir. 2000)(stating that "[w]hen a court uses the lodestar method of calculating attorney's fees, computer research charges are separately recoverable, but . . . only as a type of attorneys' fee, not as an expense."). <u>But see</u> <u>Standley v. Chilhowee R-IV Sch. Dist.</u>, 5 F.3d 319, 325 (8th Cir. 1993) (holding that "computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award").

The prevailing view among the circuit courts reflects the general understanding that online legal research reduces the number of hours spent manually performing legal research, thereby lowering the lodestar amount. <u>Arbor Hill</u>, 369 F.3d at 98. The

court agrees with this rationale and finds that, in the context of a fee-shifting provision, the charges for online legal research may properly be included in a fee award.  Plaintiff's counsel have provided monthly totals of the charges for online legal research in plaintiff's case.  (Pl.'s Mot., Ex. 2).  From October 2007 through August 2009, plaintiff's counsel incurred $3,803.40 in online research charges.  In September 2009 alone, plaintiff's counsel incurred $2,990.56.  Combining the September 2009 charge with the previous charges results in a total of $6,793.96 charged for online research; however, plaintiff has only requested $4,053.79.  Inasmuch as it appears plaintiff's counsel has reduced the overall total by approximately $2,740.17 to account for the online research performed after the Offer of Judgment was made on September 22, 2009, the court finds plaintiff's total request for online legal research costs to be reasonable.  Accordingly, the court awards plaintiff costs in the requested amount of $30,867.53.

## VI. Expenses

The offer of judgment states plaintiff may recover collectively from the State Police defendants $200,001.01 "plus Plaintiff's reasonable attorneys' fees, expenses, costs or any other fee shift available pursuant to 42 U.S.C. §§ 1983 and/or

1988 incurred to date to be determined by the Court." (Pl.'s Mot. Ex. D (Offer of Judgment)). In a footnote, defendants reserved their right to "challenge the fees, expenses and/or fee shift" sought by plaintiff. (Id.). Based on this language, plaintiff has submitted the following request for expenses:

| REQUESTED EXPENSES | |
|---|---|
| Dr. Daniel Spitz (forensic pathologist) | $9,433.75 |
| Robert Pusins (police misconduct expert) | $13,620.00 |
| Ross Dionne (economist) | $9,555.20 |
| Dr. Paul Deutsch (vocational rehabilitation expert) | $6,961.77 |
| Dr. James Rosenthal (emergency care expert) | $7,401.10 |
| TOTAL | $46,971.82 |

(Pl.'s Reply Ex. 4). Defendants contend that the offer of judgment disallows plaintiff's recovery of expert witness expenses in toto inasmuch as the language of the offer limits plaintiff's recovery to those fee shifts available under section 1988. (Defs.' Resp. 46-48). As both parties acknowledge, section 1988 does not allow for expert witness expenses in a section 1983 case. See 42 U.S.C. § 1988(c).

Based on the court's plain reading of the language drafted by defendants and incorporated into the offer of judgment, plaintiff may recover expert expenses from the defendants. The offer of judgment contemplates plaintiff's recovery of "attorneys' fees, expenses, costs or any other fee

41

shift available" under section 1983 or 1988.  Inasmuch as both
plaintiff and defendants recognize that expenses are not
available under either section 1983 or 1988, it is significant
that the offer of judgment twice listed "expenses" as recoverable
by plaintiff.  It makes little sense to interpret the language as
limiting plaintiff's recovery of expenses to those available
under section 1983 and 1988 when expenses are never available for
section 1983 actions under section 1988.  The defendants'
interpretation would render the inclusion of "expenses" within
the offer of judgment superfluous.  The court agrees with
plaintiff that the plain meaning of "expenses" in this context
includes expert witness expenses.  <u>See</u> <u>also</u> 5 U.S.C. §
504(b)(1)(A) ("'fees and other expenses' includes the reasonable
expenses of expert witnesses" in APA cases); 28 U.S.C. §
2412(d)(2)(A)  ("'fees and other expenses' includes the
reasonable expenses of expert witnesses" in cases with the United
States as a party).  Accordingly, plaintiff may recover
$46,971.82 in expert expenses as requested.


## V.   CONCLUSION


Based upon the foregoing, the court AWARDS a total of
$152,926.65 in fees, $30,867.53 in costs, and $46,971.82 in
expenses, resulting in a total award of $230,766.00.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  September 24, 2010

John T. Copenhaver, Jr.
United States District Judge